UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESE ANN SIMONETTA,

    *Plaintiff*,

*v*.                                    CASE NO. 13-CV-10607

COMMISSIONER OF              DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and the case **REMANDED** for an award of benefits.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for Disability Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 17.)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff Therese Ann Simonetta was 57 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 32.) Plaintiff's employment history includes work as a part-time cashier at McDonalds from 2002 to 2004. (Tr. at 155.) Plaintiff filed the instant claim on May 28, 2010, alleging that she became unable to work on January 1, 1997. (Tr. at 123.) The claim was denied at the initial administrative stages. (Tr. at 60.) In denying Plaintiff's claims, the Commissioner considered affective disorders, paranoid schizophrenia, and other psychotic disorders as possible bases for disability. (*Id.*) On August 24, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Oksana Xenos, who considered the application for benefits *de novo*. (Tr. at 13-53.) In a decision dated October 3, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 26.) Plaintiff requested a review of this decision on November 21, 2011. (Tr. at 7-9.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on December 13, 2012, when, after review of additional exhibits (Tr. at 182-233, 675),[2] the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On February 13, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137,

---

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a

different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

Judicial review of the ALJ's decision is direct, "but we play an 'extremely limited' role." *Simila v. Astrue,* 573 F.3d 503, 513-14 (7th Cir. 2009). "We do not actually review whether [the claimant] is disabled, but whether the Secretary's finding of not disabled is supported by substantial evidence." *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993). Just as "'[n]o trial is perfect,'. . . no administrative hearing or opinion is either[;] thus, in analyzing an ALJ's decision, a reviewing court is to look for 'fatal gaps or contradictions' and not 'nitpick' in search of essentially meaningless missteps." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1965 (N.D. Ill. 2011).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.  ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements on September 30, 1998, and that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 1, 1997, through her date last insured of September 30, 1998. (Tr. at 18.) At step two, the ALJ found that Plaintiff's bipolar disorder was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18-20.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. at 24-25.) The ALJ also found that Plaintiff was a younger individual (i.e., between the ages of 18 and 49) on the date last insured. (*Id.*) At step five, the ALJ found that Plaintiff could perform a full range of work at all exertional levels with nonexertional limitations. (Tr. at 20-25.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 26.)

6

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for mental health issues since 1999 at Crittendon, Harbor Oaks, and Henry Ford Hospitals. (Tr. at 234-77, 281-606.) Plaintiff was also treated by Shishir Senapati, M.D. (Tr. at 280), Ronald B. Levin, M.D., and Lovell I. Guanco, M.D. (Tr. at 280, 607-32), as well as at Macomb County Community Mental Health. (Tr. at 633-73.)

On September 2, 2011, Nadia Ibrashi, M.D., stated that she was Plaintiff's treating physician in 1997 and 1998, that she "treated [Plaintiff] for many years," and that in her professional opinion, Plaintiff "was unable to function in society or work outside of her home" during the relevant time period. (Tr. at 674.) Plaintiff stated that she was worse off in 1997 to 1998 than now because "I'm not dealing with any marital problems." (Tr. at 39.) Plaintiff also stated that when she worked part-time at McDonald's and an appliance store after the relevant time period, the businesses were both owned by relatives who were more tolerant of her missing work and other consequences of her mental health problems. (Tr. at 40-41.)

In 2000, Plaintiff was hospitalized for psychiatric treatment based on a probate court order for inpatient treatment because Plaintiff was a danger to herself. (Tr. at 41-42.) Plaintiff "thought that people were poisoning [her] food and intentionally trying to hurt [her]" so she stopped eating. (Tr. at 42.) One of Plaintiff's daughters was appointed as her guardian and conservator. (Tr. at 45.) Plaintiff indicated that she waited to file any sort of claim because she "didn't want to take advantage of the system" and she "felt that [she] could work," but states that now she has "accepted the fact" that she cannot. (Tr. at 46-47.)

At the administrative hearing, Plaintiff testified that she believes she is disabled because "I have times in my life when I am non-functioning. . . . I withdraw from the outside world, and I stop eating." (Tr. at 35.) Plaintiff indicated that she has had these problems "since the middle 1980s" and that during the period of 1997 to 1998, she was "very depressed" and "felt very alone" because her husband had left her. (Tr. at 35-37.)

7

The ALJ asked the vocational expert ("VE") to assume a person with Plaintiff's background who

> can perform work at all exertional levels but is limited to unskilled, routine, low stress, non production oriented work involving one to two-step instructions, limited contact with the general public, supervisors and coworkers, and minimal changes in the work setting.

(Tr. at 48.) The VE responded that such a person would not be able to perform any of Plaintiff's past relevant work but could perform the 2,500 hand packager jobs, the 2,500 small products assembler jobs, and the 1,000 visual inspector jobs available in Southeastern Michigan. (*Id.*) The VE further indicated that his testimony was consistent with the Dictionary of Occupational Titles. (Tr. at 49.)

### F.   Analysis and Conclusions

#### 1.   Legal Standards

The ALJ found that Plaintiff could perform a full range of work at all exertional levels with nonexertional limitations. (Tr. at 20-25.) After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to consideration of whether substantial evidence supports the ALJ's decision.

#### 2.   Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 13.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "committed reversible error in failing to comply with Social Security Ruling 83-20 regarding the onset date of Ms. Simonetta's

8

impairments" (Doc. 13 at 10-15), failed to make a proper residual functional capacity assessment (*id.* at 15-17, 20-22), and failed to properly assess Plaintiff's credibility. (*Id.* at 18-19.)

### a. Evidence During Relevant Time Period

As Defendant points out, Plaintiff's argument cannot be that the ALJ failed to properly determine the alleged onset date since that date was chosen by Plaintiff on her application. (Doc. 17 at 11; Tr. at 123.) However, Plaintiff also argues that the ALJ erred in failing to consider evidence outside the period between the alleged onset date of January 1, 1997, and the date last insured of September 30, 1998. (Doc. 13 at 10-15.)

As to the timing of the most relevant evidence, in order to be eligible for disability insurance benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i)(2)(c); 423(a), (c-d). "If a clamant is no longer insured for disability insurance benefits at the time she files her application, she is entitled to disability insurance benefits only if she was disabled before the date she was last insured." *Renfro v. Barnhart*, 30 F. App'x 431, 435 (6th Cir. 2002). Therefore, the ALJ generally only considers evidence from the alleged disability onset date through the date last insured. *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990). In the instant case, the ALJ accurately determined that the relevant period is January 1, 1997, through September 30, 1998.

"Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Social Sec. Admin.,* 88 F. App'x 841, 845 (6th Cir. 2004). In order for evidence of the plaintiff's condition after the date last insured to be relevant to the disability decision, the evidence "must relate back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003). If the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

9

In the instant case, the ALJ noted that Plaintiff was hospitalized for psychiatric reasons in 2000 and 2001, but stated that "like all the rest of the claimant's treatment records, records from the center do not document reports of significant events in 1997 or 1998. Rather, recent treatment records reference only hospitalizations described above – all post-dating the alleged disability period." (Tr. at 24.) The ALJ acknowledged that Plaintiff's records from her treating physician, Dr. Ibrashi, were "destroyed per a seven-year document retention policy." (*Id.*) However, the ALJ nonetheless discounted a letter written by Dr. Ibrashi wherein Dr. Ibrashi stated that she had treated Plaintiff "for 'many years' and that she was unable to function in society or work outside her home" because the letter was "vague about time" and because the letter "provides no specific information about the claimant's purported limitations and no supporting medical documentation." (Tr. at 24, 674.)

I suggest, however, that there is evidence of record that Plaintiff's mental impairments were disabling during the relevant time period that should have been given controlling weight. Plaintiff's treating physician, Dr. Ibrashi, indicated that during 1997 and 1998, in her professional opinion, Plaintiff "was unable to function in society or work outside of her home" during the relevant time period. (Tr. at 674.) The ALJ discounted Dr. Ibrashi's opinion because it had no supporting documentation even though the ALJ acknowledged that the lack of support was not due to lack of sound medical practices, but rather was simply the result of a records retention policy. (Tr. at 24.) Lack of records due to a records retention policy is not a legitimate reason to discount a treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). In addition, an "ALJ's determination that a claimant's complaints are incredible, based on absence of corroborating medical records documenting same, when those records have been destroyed through no fault of the claimant, cannot stand." *Reese v. Astrue*, No. 08-1423, 2010 WL 439528, at *6 (W.D. La. Feb. 4, 2010) (records destroyed by Hurricane Katrina).

I further suggest that Dr. Ibrashi's opinion was not inconsistent with other evidence of record since Plaintiff required court-ordered, in-patient hospitalization two years later, indicating

10

that she was likely severely impaired during the relevant time period. (Tr. at 41-42.) In addition, Plaintiff testified that she was worse off in 1997 to 1998 than now because "I'm not dealing with any marital problems." (Tr. at 39.) Plaintiff also stated that when she worked part-time at McDonald's and an appliance store after the relevant time period, the businesses were both owned by relatives who were more tolerant of her missing work and other consequences of her mental health problems. (Tr. at 40-41.)

I therefore suggest that the ALJ improperly discounted Plaintiff's treating physician's opinion and her credibility and, thus, that the ALJ's findings are not supported by substantial evidence.[3]

### b. Remand

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. The court may reverse and direct an award of benefits if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits . . . where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky,* 35 F.3d at 1041; *accord, Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). This comports with the principle that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F3d 541, 547 (6th Cir. 2004) (citations omitted).

In this case, for the reasons set forth above, I conclude that there are no unresolved legal or factual issues. Accordingly, I suggest that the ALJ's decision should be reversed and the case remanded for an award of benefits.

---

[3]Since I suggest this issue is case dispositive, I do not address the remaining issues raised by Plaintiff.

### 3. Conclusion

For all the reasons stated above, I suggest that the case be remanded for an award of benefits.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                        s/ *Charles E Binder*
                                                      CHARLES E. BINDER
Dated: January 24, 2014                     United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 24, 2014                  By     s/Patricia T. Morris
                                                        Law Clerk to Magistrate Judge Binder